100

MANTZ v. KRONMILLER.
Patent Appeal No. 5466.

Court of Customs and Patent Appeals.
May 4, 1948.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Charles V. Hildebrecht, of Chicago, Ill., of counsel), for appellant.

George H. Fisher, of Minneapolis, Minn. (Frederick E. Lange, of Minneapolis, Minn., of counsel), for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of the subject matter of the single count to appellee.

The interference involves a patent to appellant, No. 2,321,095, dated June 8, 1943, on an application filed July 24, 1939 and an application of appellee, serial No. 87,-706, dated June 27, 1936. Therefore, appellee is the senior party.

The involved count is a claim copied by appellee from the patent to appellant after it had been issued and reads as follows:

"1. In a device of the character described, in combination, a controlling member having an operative position and a safety position, latch means for holding said controlling member in operative position, an electromagnet, an armature for said electromagnet which, by movement to retracted position, releases said latch means for movement of said controlling member to safety position, and reset means for actuating said armature to attracted position and in the actuation of the armature to attracted position being operable to move said latch means to position to pick up said controlling member for actuation thereof to operative position."

Appellant moved to dissolve the interference on the ground that appellee could not make the count. The Primary Examiner, after hearing, denied the motion. The Board of Interference Examiners on final hearing reviewed the question of appellee's right to make the count and agreed with the holding of the Primary Examiner, and accordingly awarded priority of invention of the subject matter of the count to appellee.

The sole question before us is whether or not appellee has the right to make the count.

The subject matter out of which the interference arises relates to a safety valve for gas burners. The valve through which the gas is fed on its way to the burner closes when the pilot light is extinguished. Specifically, the invention in issue relates to a thermocouple shut-off device which operates through a comparatively slight electromotive force produced by the thermocouple which is exposed to the heat of a pilot flame. While the pilot flame is burning, the flow of fuel to the main burner continues. When the pilot flame is ex-

tinguished, an electromagnet, which was energized by the thermocouple, becomes deenergized, and the shut-off device cuts off the flow of fuel to the burner by being moved into a closed or safety position.

Apparatus of the type here involved are old in the art and the issue here is only concerned with an arrangement of elements comprising latching means designed to maintain a controlled member of the safety shut-off device in an open or closed position.

In order that the device of appellee may be more readily understood, we reproduce Fig. 9 of his application which represents the valve in an open position:

(unnumbered) at the lower left side of the figure passes downwardly through the aperture between the valve disc and the valve seat 124 and thence through the pipe (unnumbered) shown at the lower right part of the drawing to the main burner (not shown). The valve disc 125 is secured to the valve stem 130. The valve stem is spring biased to closed position by the spring member 156. Member 177 is one of the two cores of an electromagnet. The cores are electrically connected to the thermocouple, which it is unnecessary to show in the drawing, but which in appellant's apparatus would appear above the upper right of the drawing along the line indicated by the arrow. Cooperating with

Fig. 9.

Referring to the drawing, the numeral 125 represents the valve disc, which is the controlling member. It will be observed that gas coming through the section of pipe the electromagnet is armature 178 carried by yoke member 180. The yoke member is connected to the slidable pin 166, which extends into the valve casing. The func-

tion of spring 193 is to bias the armature away from the electromagnet and to draw pin 166 outwardly from the casing. The valve in its open position, as shown in the drawing, is so maintained by the arrangement of a bell crank lever 145 pivotally connected to valve stem 130 and also to the bell crank lever 138, at 144, which it will be observed cooperates with the pin 166. The pin 166 stays in the position shown in Fig. 9 as projecting under the outer right end of lever 138 as long as the electromagnet is energized. The spring 163 serves to bias the lever 145 on its pivotal connection with lever 138 holding valve disc 125 in open position, as long as the levers 138, 145, and pin 166 are engaged. When the pin 166 is drawn to the right by reason of deenergizing the electromagnet, the spring 156 pushes the valve disc 125 down to closed position. Knob 161 is the resetting member. That knob and stem 160 cooperate with the upwardly extending arm of the bell crank lever 145. When the thermocouple becomes deenergized by reason of extinguishment of the pilot light, the valve immediately assumes a closed position. It will be seen that to bring about such closed position, the spring 193 is effective to draw the pin 166 from under the bell crank lever 138, and due to the expansion of spring 156, the bell crank levers fall into a downward position together with the stem and the control member. When the spring 193 pulls the stem 166 from the open position, it also pushes the armature 176 away from the posts of the electromagnet. In order to reset the device, the knob 161 is pulled outwardly. This causes the collar 162, by engagement with the upright arm on the left of bell crank lever 138, to swing that lever in counter clockwise movement from the above mentioned downward position. After the right end of bell crank lever 138 passes in counter clockwise movement above the position of pin 166, the lever 138 engages the inwardly extending curved arm of the small bell crank lever 215, causing the downwardly extending narrow arm of lever 215 to engage the collar 219 moving the pin 166 into holding position, shown in Fig. 9 beneath the right end of lever 138, and the armature 178 is pulled into attracted position.

When the pilot burner has again been lighted and has heated the thermocouple so as to energize the electromagnet strongly enough to hold the armature 178 in attracted position, the reset knob is released and the pin 166 will continue to support the lever 138, as shown in Fig. 9 and the spring 163 will hold the stem 160 inwardly. In its inward resetting movement, the stem 160 engages and swings the bell crank lever 145 in clockwise movement about the pivot 144 on the lever 138 and such movement of the lever 145 opens the valve disc member 125.

It is conceded by the parties that the count is not ambiguous. Therefore, it must be given the broadest interpretation which it will reasonably support. Bechtold v. Lanser, 82 F.2d 415, 23 C.C.P.A., Patents, 1051, and Henry P. Field v. Audley Hart Stow, 49 P.2d. 840, 18 C.C.P.A., Patents, 1437.

Appellant contends that the structure of appellee does not meet the limitation of the count for "latch means for holding said controlling member in operative position" and the further limitation for the "reset means for actuating said armature to attracted position and in the actuating of the armature to attracted position being operable to move said latch means to position to pick up said controlling member for actuation thereof to operative position."

Appellant contends that the tribunals below erred in considering lever 136, lever 145, and pin 166 of appellee's structure as the "latch means for holding said holding member in operative position." Appellant argues that even if the lever 138 of appellee's device is considered as part of the latch means, the bell crank lever 145 is not a latch means nor a part thereof. It is urged in appellant's brief that lever 138 is not latching means nor in anywise a part of the latching means, for the alleged reason that it simply operates to open the valve disc 125 and to retain it in open position under the thrust of the spring 163 which opens and holds the valve disc 125 in open position when the bell crank lever 138 is held in appropriate position by pin 166.

Appellant seems to rely upon the definition of the word "latch" and quotes from

Webster's New International Dictionary as follows:

"A movable piece which holds anything in place by entering a notch or cavity; specif., the catch which holds a door or gate when closed, though it be not bolted. To catch or fasten by means of a latch."

Appellant also quotes from Funk and Wagnall's College Standard Dictionary the definition of the word "latch" as "A catch for fastening a door, lid, shutter, etc., commonly not requiring a key."

Seemingly, in connection with his contention concerning the latch means as set forth in the count, appellant relied before the Board of Interference Examiners on such dictionary definition, because in its decision the board mentioned that according to the dictionary definition of the word "latch" it is not necessarily a single element but may be a combination of elements which include operating members. The board further stated that the addition of the word "means" to the word "latch" has a broadening effect. Pointing out that because the valve in appellee's device can not be held in open position by latch pin 166, except through the cooperative instrumentality of the bell crank levers 138 and 145, the board was of the opinion that the decision of the Primary Examiner, with respect to elements 166, 138, and 145, was proper.

There can be no question but that when the controlling member 125 is in the open or operative position that it is so held by latch means. This, in our opinion, is made clear from an examination of Fig. 9, which shows bell crank lever 138 resting on the retractable pin 166. However, without the cooperation of the lever 138, lever 145, and pin 166, it is obvious that there can be no latching.

We agree with the reasoning of the Board of Interference Examiners that "latch means" is broader in scope than the word "latch" and that appellee has clearly shown, for the reason herein given, that his structure possesses in elements 138, 145, and 166, in their cooperating action, "latch means" such as conforms to the limitation of the count which calls for "latch means

for holding said controlling member in operative position."

There can be no question but that the reset knob 161, when pulled to the left brings the armature 178 into attracted position. When the knob 161 is pulled outwardly, the collar 162 rocks the left elevated arm of crank lever 138 in counter clockwise movement. Then lever 138 and lever 145 are moved to a juxtaposition and the downward movement of the lever 138 is prevented by the pin 166. In that movement, lever 145 elevates valve stem 130 so as to actuate the valve to open or "operative" position.

It is contended by appellant that, even though the lever 145 should be considered as part of the latch means, the count can not apply to the structure of appellee for the reason that that lever is alleged to be unmoved by actuation of the armature "to attracted position" by the reset member "to position to pick up said controlling member for actuation thereof to operative position," as called for in the count. He makes that contention for the reason that lever 145 is pivotally connected with the valve stem and thus he alleges there can be no picking up of that stem by the lever 145. With respect to that contention, the board held, and properly so in our opinion, that the language in the count does not require that the latch means, in order to pick up the control member, must be out of contact with the stem, and, therefore, in that respect, the disclosure of appellee supports the count.

■ We are in thorough agreement with the reasoning of the board, as we have above set out, in its holding that appellee's application clearly discloses "latch means for holding said controlling member in operative position." The count does not require that the latch means be out of contact with the stem, and, therefore, we hold that the involved application definitely shows "reset means for actuating said armature to attracted position and in the actuation of the armature to attracted position being operable to move said latch means to position to pick up said control-

ling member for actuation thereof to operative position" as called for in the count.

The decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.