41 C.C.P.A.(Patents)

**DE BENNEVILLE v. ANDERSON.**

**Patent Appeal No. 6007.**

United States Court of Customs and Patent Appeals.

April 9, 1954.

Rehearing Denied May 24, 1954.

John F. Bergin and T. Wallace Quinn, Philadelphia, Pa., for appellant.

Franklin T. Flaherty, Wilmington, Del. (Allan R. Plumley and A. McAlevy, Wilmington, Del., of counsel), for appellee.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of the invention as claimed in the single count in issue to appellee, Arthur William Anderson.

This interference is between appellee's application, Serial No. 85,720, filed April 5, 1949 and appellant's application, Serial No. 106,332, filed July 22, 1949. Appellant's application was originally filed as a joint application, including one James S. Strong as a joint inventor. Subsequent to the declaration of this interference, and in January 1951, Strong filed a disclaimer to his joint inventorship of the matter disclosed in appellant's application, and the application was changed to the sole application of appellant. Appellant, having the later filing date, is the junior party to this interference.

The invention here involved relates to the preparation of azo compounds, and is defined by the count in issue as:

"Process of preparing alpha, alpha-azodiisobutyronitrile which comprises reacting alpha-aminoiso-butyronitrile in an aqueous solution with a hypochlorite selected from the group consisting of alkali metal and alkaline earth metal hypochlorites at a temperature of about 0°C."

The count originally suggested by the Primary Examiner was limited to "sodium hypochlorite" but on motion to amend by the appellant this was changed to the group set out in the above count. The count appears as claim 7 of appellant's application and claim 11 of appellee's application.

The involved invention is for a new method of producing a known compound of known utility. As is apparent from the count, it involves reacting alpha-aminoisobutyronitrile with a hypochlorite in an aqueous solution at a temperature of about 0°C. The reactant alpha-aminoisobutyronitrile will hereinafter be referred to as aminonitrile. It appears, from the applications of the par-

ties involved, that the invention is for a low cost method of producing the azo compound, useful as a polymerization catalyst, which was formerly only available through the use of an expensive reactant. This old method is apparently well known in the literature of the chemistry art, dating at least from 1896. (Thiele and Heuser).

De Benneville, as the junior party, has the burden of proving priority of the invention, as defined by the count in issue, by a preponderance of the evidence. Field v. Knowles, 183 F.2d 593, 37 C.C.P.A., Patents, 1211.

Both parties took a great deal of testimony and introduced numerous exhibits. The Board of Interference Examiners carefully reviewed all of this evidence in its decision. In awarding priority to the appellee, the party Anderson, the board held that the appellee had not proved a reduction to practice as required by law although he had proved prior conception of the invention. The board also held that the appellant, the party de Benneville, had failed to prove reduction to practice of the count in issue. Therefore, the party Anderson was awarded priority on the basis of the first to conceive and the first to file.

It was the board's opinion that the party de Benneville did not show a reduction to practice of the count in issue because the experiment relied on to show reduction to practice was carried out at a temperature of from "5–10°C." This did not, in its opinion, satisfy the requirement in the count that it be carried out "at a temperature of about 0°C." It is from this holding of the board that the party de Benneville appeals. All of the reasons of appeal relate to this alleged error.

Appellee, while not filing a cross-appeal, argues that the evidence submitted on his behalf definitely shows a reduction to practice of the invention, as defined in the count, prior to any date submitted by the appellant. We only allude to this since it is not determinative of the issue on appeal. Appellee's argu-

ments would only be important were we to decide that the Board of Interference Examiners was in error in its interpretation of the phrase "about 0°C." Therefore, we will discuss the case of appellant, the party de Benneville.

From the record, it appears that de Benneville first performed an experiment relating to the invention on November 29, 1948. The process employed was first to make sodium hypochlorite and then to add aminonitrile, the latter having been obtained from a co-worker, Thomas Walton. The product was a clear yellow solution and it was noted that crystals appeared. The solution was placed in a refrigerator and the next day crystals which had formed were filtered off. The melting point of these crystals was taken by de Benneville and noted at 99–105°C., with a gas given off. A melting point of 105–106°C. with decomposition is said to be one of the characteristics of the azo compound. This experiment was recorded at p. 58 of de Benneville's laboratory notebook No. 7, but no record of the temperature at which the process was carried out was made. The notebook was signed and witnessed on p. 54 for pages 45–54, inclusive, on December 10, 1948. Obviously this cannot be considered a reduction to practice of the count in issue. It is not a reduction to practice not only for the reason that the process does not conform to the count because of lack of the temperature requirement, but also because there is not any corroboration of the process and the resulting product as required by law. Senkus v. Johnston, 166 F.2d 597, 35 C.C.P.A., Patents, 1008.

From December 14 through December 16, 1948, a number of experiments were carried out by a Mrs. Jane H. Macartney on behalf of de Benneville. These experiments were carried out at the direction of de Benneville and were recorded in Mrs. Macartney's laboratory notebook No. 5. The record of these experiments are on pages 60–65 and 67 of Mrs. Macartney's notebook and these pages were introduced as de Benneville's exhibit No. 5. At that time Mrs. Macartney was em-

ployed as a chemist by de Benneville's assignee and worked under the supervision of de Benneville. Only two of these experiments are relied on to show a reduction to practice. These two experiments are the only ones in which the end product was checked by a nitrogen analysis to aid in identifying that product as the azo compound. In the first of these experiments there is no indication of the temperature at which the experiment was carried out. There is a reference to cooling with an ice bath. This alone is not sufficient to show that it was carried out at "about 0°C." First because it is not clear that a state of equilibrium was reached between the ice bath and the materials used in the experiment. Further, the reaction of these materials is an exothermic reaction which indicates that temperature of the solution increases as the materials react. This is shown by the following notation made by Mrs. Macartney in her record of the experiment, at p. 61 of her notebook:

"Removed bath and solution warmed up rather quickly, so ice bath replaced."

In our opinion this experiment cannot be considered to have been a process carried out "at a temperature of about 0°C." as required by the count.

The second experiment relied on is recorded at p. 65 of Mrs. Macartney's laboratory notebook No. 5. In this experiment calcium hypochlorite was reacted with aminonitrile. This was done by dropping the aminonitrile into the hypochlorite which was suspended in 50 g. of ice. With reference to the temperature Mrs. Macartney recorded the following:

"Dropped in the amine [aminonitrile] keeping the temp. at 5–10°C. Addition took 15 min. Some exotherm noticed. Stirred for 2 hrs. at 0–5°C."

In this experiment there is no doubt that the process of the count was carried out and that the desired end product was obtained. However, it is not clear that the process was performed "at a temperature of about 0°C." as required by the count. According to the record in Mrs. Macartney's notebook the aminonitrile was added over a 15 minute period at temperatures ranging from 5 to 10°C. Since this is an exothermic reaction it seems logical to assume that the addition was started at 5°C. and when completed the temperature had risen to 10°C. Apparently, the temperature was then lowered to 0–5°C. and stirred for two hours. It may have lowered because the exothermic reaction was completed. At any rate, there is nothing to indicate that the reaction continued during this two hour period. Nor is there any indication as to the manner in which the temperature varied over the two hour period. Therefore, we must agree with the board in their holding that this experiment was carried out at a temperature of "5–10°C."

■■ Having decided that the process was performed at "5–10°C." we must next decide whether this can be considered "at a temperature of about 0°C." Appellant argues that this phrase should be interpreted to mean a range of temperatures, at least 0–10°C. This is apparently the only range of temperatures that is common to both applications. However, as we have said many times, while the count in an interference proceeding is to be given the broadest interpretation that the language will reasonably permit, the limitations expressed therein should not be disregarded and must be considered as material. Kropa v. Robie, 187 F.2d 150, 38 C.C.P.A., Patents, 858, and cases cited therein. We have also stated that in applying the above rule the word "reasonably" should not be deleted. Sessions v. Schmidt, 63 F.2d 448, 20 C.C.P.A., Patents, 912. There can be no doubt that the phrase "at a temperature of about 0°C." is a limitation expressed in the count. As such it cannot be disregarded, but must be given a reasonable interpretation. In our view it is not an ambiguous phrase and its construction does not appear to be difficult. We think it obvious that

such a phrase cannot reasonably be construed to mean any range of temperatures, much less a temperature range from 0 to 10°C. Nor can it reasonably be construed to include a process performed at a temperature of "5–10 C." Therefore, we must conclude that de Benneville did not establish a reduction to practice of the invention as defined by the count in issue.

■ If appellant was of the opinion that the count should include a range of temperatures it was his right to suggest a count during the motion period to cover such range. Appellant did take advantage of this right to increase the coverage of the count in issue, as it relates to the hypochlorite. He should also have done this with relation to the temperature after studying his proofs. Since he did not have such a count included he must adhere to the count in issue and his proofs of a reduction to practice must meet the express limitations of that count. This he has failed to do, therefore, he has not proved a reduction to practice of the invention defined in that count.

■■ The Board of Interference Examiners held that the party Anderson had established prior conception beyond any doubt. No appeal was taken from this ruling of the board. Therefore, we must accept as fact that Anderson was the first to conceive. Jones v. Winsor, 133 F.2d 931, 30 C.C.P.A., Patents, 824. Since de Benneville did not prove a reduction to practice he is limited to his filing date. Anderson being the first to conceive and the first to file is considered the first inventor and entitled to the award of priority. Therefore, we find no reason to review Anderson's arguments that he did reduce the invention defined in the count to practice long prior to de Benneville's entry into the field.

For the reasons hereinbefore stated the decision of the Board of Interference Examiners is affirmed.

Affirmed.

JACKSON, Judge, retired, sat for GARRETT, Chief Judge.