43 C.C.P.A.(Patents)

**Malcolm Kent SMITH, Appellant,**

v.

**Frank Wesley LANE, Appellee.**

**Patent Appeal No. 6191.**

United States Court of Customs and Patent Appeals.

April 18, 1956.

Rehearing Denied June 15, 1956.

Darby & Darby, New York City (Harvey W. Mortimer, New York City, Bacon & Thomas, and Wm. Wallace Cochran, Washington, D. C., of counsel), for appellant.

John P. Hancock and A. Newton Huff, Wilmington, Del. (S. Brownell, Jr., Wilmington, Del., of counsel), for appellee.

Before JOHNSON, Acting Chief Judge, and WORLEY and JACKSON (retired), Associate Judges.

JOHNSON, Acting Chief Judge.

This is an appeal by Malcolm Kent Smith from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention to the party Frank Wesley Lane in interference No. 86,346, which involved Lane's patent No. 2,580,931, issued January 1, 1952, and Smith's patent application, serial No. 283,645, filed April 22, 1952.

There are five counts on appeal. These counts relate to a process for producing sebacic acid. The board considered counts 2 and 8 representative of the counts in interference, and we will also consider them as such. These counts are as follows:

"2. A process for the production of sebacic acid which comprises commingling a ricinoleic acid-containing compound with a stoichiometric excess of an alkali to form a substantially non-fluid saponified, solid mixture, contacting the resulting solid mass with steam superheated to at least 200°C. at substantially atmospheric pressure to effect pyrolysis thereof, recovering the alkali sebacate product and converting it to sebacic acid."

"8. A process for the production of sebacid [sic] acid which comprises pyrolyzing at substantially atmospheric pressure by direct contact with steam at a temperature of at least 200°C. a non-fluid saponified, solid mixture of a functional derivative of ricinoleic acid with a stoichiometric excess of an alkali metal hydroxide, recovering the resulting alkali sebacate product, and precipi-

tating sebacic acid therefrom by acidification of an aqueous alkali solution thereof."

It is to be noted that the Smith application was filed after the Lane patent issued and that the counts were copied by Smith for purposes of an interference. It is to be further noted that only the junior party Smith took testimony and submitted evidence for the purpose of attempting to establish that he reduced the invention involved in the counts to practice prior to appellee Lane's filing date.

The testimony and evidence in behalf of Smith were to the effect that certain experiments which were conducted in 1946 were an alleged reduction to practice of the counts in issue. It was urged that since these experiments occurred prior to the date relied on by appellee Lane, Smith was entitled to priority.

The experiments which are relied on by Smith as a reduction to practice of the counts were performed by Purcell, evidently under Smith's supervision. These experiments consisted of mixing and heating *liquid* caustic and *liquid* methyl ricinoleate in a dough mixer externally heated by an oil jacket. It appears from the testimony that steam was obtained during the reactions from the water in the mixture which was converted to steam because of the high reaction temperatures.

The Board of Patent Interferences held that the experiments conducted in 1946 by appellant Smith did not meet the limitations of the counts, and therefore did not establish a reduction to practice. In this respect, the board noted that each of the counts recited that the reaction mixture was a substantially non-fluid or solid mass, and, except for count 1, that the solid mass was pyrolyzed by contacting it with steam superheated to at least 200°C. at substantially atmospheric pressure. The board found that the experiments relied on for Smith's reduction to practice did not show the foregoing factors, and therefore did not establish a reduction to practice of the counts in issue. In the foregoing respects, the board specifically stated:

"With respect to point 1, Smith contends that the counts refer to the solid or non-fluid state at room temperature, rather than to the condition of the reaction mixture at the time, or just prior to the time, of reaction. Be that as it may, the fact remains that the counts call for contacting the solid mass with pyrolyzing steam and it does not appear that this requirement was satisfied in Purcell's experiments. This is for the reason that Purcell did not contact his mass with pyrolyzing steam while the mass was at room temperature; that is to say, while it was solid. On the contrary, the contents of the reactor were non-solid at the time steam of pyrolyzing quality was produced *in situ,* so that at no time during the process did the pyrolyzing steam contact any of the solid mixture specified in the counts.

"As to the second point, it is true (as Smith contends) that the counts do not specify the source of the steam. We do not agree, however, that steam formed *in situ* satisfies the counts. It must be remembered that it is the steam which effects the pyrolysis, according to the terms of the counts, and it has not been established that this is the case in Purcell's experiments. It could well be that pyrolysis in Purcell's experiments was due to the application of external heat and that the resultant steam had little if any effect insofar as pyrolysis was concerned.

"In summary, the party Smith has not shown that Purcell *contacted* a 'solid mass' with pyrolyzing steam nor has it been shown that the steam which did contact the reaction mixture effected pyrolysis. Accordingly, reduction to practice has not been established."

Accordingly, priority of invention was awarded to appellee Lane.

The question before us on appeal is whether the experiments relied on by Smith meet the counts, and therefore constitute a reduction to practice thereof.

■■ It is well settled that the right to make counts is a question ancillary to priority. Simpson v. Neracher, 191 F.2d 416, 39 C.C.P.A., Patents, 709. Where the counts are broadly drawn, and not ambiguous, they must be given the broadest construction which they will reasonably permit, Martin v. Friendly, 58 F.2d 421, 19 C.C.P.A., Patents, 1181, and the word reasonably should not be deleted, De Benneville v. Anderson, 212 F.2d 612, 41 C.C.P.A., Patents, 891.

We will now proceed to analyze the counts in the light of appellant Smith's alleged reduction to practice and in the light of the foregoing applicable law. Count 2 recites "commingling a ricinoleic acid-containing compound with a stoichiometric excess of an alkali to form a substantially non-fluid saponified, solid mixture." The experiments relied on by Smith do not indicate to us that the combined compounds ever existed as a solid mixture prior to pyrolysis thereof since they were introduced separately as liquid solutions into a reaction vessel which was heated. Evidence and testimony were submitted by appellant to the effect that at room temperature the mixture used by Smith would be nonfluid and solid. However, there is nothing in the record to show that the Smith mixture was ever at room temperature, and therefore existed as a solid. We are therefore of the opinion that the experiments relied on by Smith did not meet the portion of the counts which calls for a "solid mixture."

Appellant indicates that it is stated in the Lane specification that castor oil acids (a liquid) were reacted with a sodium hydroxide solution at elevated temperatures. However, this argument overlooks the fact that this reaction was of a preliminary nature for the purpose of forming a powder mixture which was subsequently formed into pellets and then pyrolyzed. It is to be again noted that appellant Smith never indicated that he formed a solid from his mixture prior to the step of pyrolysis. Appellant's argument therefore does not convince us that he was dealing with a substance in the solid state, as required by the counts. In summary, we are of the opinion that a broad and reasonable interpretation of the portion of the counts relating to the "solid mixture" does not include the mixing of the solutions performed by appellant.

It is to be further noted that count 2 recites "contacting the resulting solid mass with steam superheated to at least 200°C. at substantially atmospheric pressure to effect pyrolysis thereof." We are in agreement with the board that there was no showing from the experiments that Smith ever contacted the solid mass with pyrolyzing steam, since, as stated above, there is no showing that Smith's mixture was solid prior to or during pyrolysis.

Count 2, in our opinion, clearly recites that the steam effects the pyrolysis of the solid mass. Appellant has shown by testimony in his behalf that a certain amount of steam was generated *in situ* in his externally heated reaction vessel, and he contends that since the counts do not specify the source of the steam, the generation of steam *in situ* meets the counts. In this respect appellant states: " 'Contacting' can be effected by means of *in situ* formed steam as well as by charged steam." There is no doubt that steam formed *in situ* in the reaction vessel "contacts" the mixture. However, we are in full agreement with the board that it has not been shown by appellant that his steam, and not the externally applied heat, effects the pyrolysis. As stated by the board, "It could well be that pyrolysis * * * was due to the application of external heat and that the resultant steam had little if any effect insofar as pyrolysis

was concerned." Thus, since the count clearly calls for contacting the *solid mass* with steam *to effect pyrolysis* thereof, and since the experiments relied on by appellant do not clearly indicate to us that it was the steam and not the external heat which effected the pyrolysis, we are of the opinion that appellant's experiments do not clearly indicate a reduction to practice of the subject matter of the counts.

██ In order to obtain priority in an interference between a patent and a subsequently filed application, the applicant must prove priority beyond a reasonable doubt. Kruger v. Resnick, 197 F.2d 348, 39 C.C.P.A., Patents, 994.

However, in the present case it has not been established that the appellant ever actually reduced to practice the same invention defined in the counts. There is no need, therefore, to review the testimony relating to priority to determine whether appellant has met his burden.

For the foregoing reasons, the decision appealed from is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL and COLE, Judges, because of illness, did not participate in the hearing or decision of this case.